Slip Op. 11-105

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| ADVANCED TECHNOLOGY & MATERIALS CO., LTD., BEIJING GANG YAN DIAMOND PRODUCTS COMPANY, and GANG YAN DIAMOND PRODUCTS, INC., <br><br>  Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br>  Defendant, <br><br> and <br><br> DIAMOND SAWBLADES MANUFACTURERS COALITION, <br><br>  Defendant-Intervenor. | Before: R. Kenton Musgrave, Senior Judge <br> Court No. 10-00012 |

**OPINION**

[Plaintiff's Motion for Judgment on the Agency Record is denied.]

Decided August 18, 2011

*Barnes, Richardson & Colburn* (*Jeffery S. Neeley*, *Michael S. Holton* and *Stephen W. Brophy*) for Plaintiffs.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Claudia Burke*); Office of the Chief Counsel for Import Administration, U.S. Department of Commerce (*Hardeep K. Josan*), Of Counsel, for Defendant.

*Wiley Rein, LLP* (*Daniel B. Pickard* and *Maureen E. Thorson*) for Defendant-Intervenor.

Musgrave, Senior Judge: Plaintiffs Advanced Technology & Materials Co. Ltd., Beijing Gang Yan Diamond Products Company, and Gang Yan Diamond Products, Inc., ("ATM") seek judicial review of a decision by Defendant International Trade Administration, United States Department of Commerce ("Commerce" or "the Department") rejecting its request for a changed circumstances review pursuant to 19 U.S.C. § 1675(b). ATM now moves for Judgment on the Agency Record under USCIT Rule 56.1, requesting that the court remand the matter to Commerce with orders to conduct the review. Defendant and Defendant-Intervenor Diamond Sawblades Manufacturers Coalition ("DSMC") contend that the matter should be dismissed for lack of jurisdiction or, alternatively, that ATM's motion should be denied on the merits. For the reasons set forth below, the court finds that it has subject matter jurisdiction over the claim but that ATM's motion must be denied.

This action ultimately concerns the Department's policy change with respect to "zeroing,"[1] which, in relation to this matter, became effective after the final determination (which ATM has challenged in a separate action) but before issuance of an antidumping duty order. The facts of this case are somewhat unusual however, because the antidumping duty order was issued only after the International Trade Commission's ("ITC's") decision was successfully challenged in this court, almost three years later.

---

[1] "Zeroing" is a methodology used in dumping margin calculations where Commerce uses only the sales margins of merchandise sold at less than fair value to calculate the final weighted-average dumping margin; merchandise sold at or above fair value are assigned a sales margin of zero. *See Corus Staal BV v. Dep't of Commerce,* 395 F.3d 1343, 1345-46 (Fed. Cir. 2005).

Background

Zeroing has a long and illustrious history that need not be recounted here. What is relevant to this matter is that in 2005 the European Communities brought an action before the World Trade Organization's (WTO's) Dispute Settlement Body challenging the United States' practice of zeroing in antidumping investigations. In October 2005, the WTO issued a report finding that the United States' practice of zeroing was inconsistent with its obligations under the Uruguay Round Agreements Act ("URAA"). *See generally U.S. Steel Corp. v. United States*, 621 F.3d 1351, 1354 (Fed. Cir. 2010).

The manner and extent to which the United States will respond to an adverse WTO report is set forth, in part, in Section 123 of the URAA, codified at 19 U.S.C. § 3533 ("Section 123"). In keeping with the agency requirements set forth in Section 123, the Department published in the Federal Register a notice proposing to discontinue the practice of zeroing and soliciting comments thereon. *See Antidumping Proceedings: Calculation of the Weighted Average Dumping Margin During an Antidumping Duty Investigation*, 71 Fed. Reg. 11189 (March 6, 2006). On December 27, 2006, the Department published its final decision that it would no longer use zeroing to calculate dumping margins in antidumping investigations, and that the new policy would be applied to future investigations and to "all investigations pending before the Department" as of the January 16, 2007 effective date. *Antidumping Proceedings: Calculation of the Weighted Average Dumping Margin During an Antidumping Duty Investigation; Final Modification*, 71 Fed. Reg. 77722 (Dec. 27, 2006) ("*Section 123 Determination*").

The Diamond Sawblades Investigation

The petition giving rise to the diamond sawblades investigation was filed by DSMC on May 3, 2005. On May 12, 2005 the Department announced the initiation of an antidumping duty investigation of diamond sawblades and parts thereof from the People's Republic of China. In December 2005 the Department preliminarily determined that the subject merchandise was being sold in the United States for less than fair value; in keeping with then-current practice, the Department used zeroing in its calculation of the weighted-average dumping margins. Commerce issued the final determination on May 22, 2006, again with the use of zeroing, again finding that subject merchandise was being sold in the United States for less than fair value. *Diamond Sawblades and Parts Thereof from the People's Republic of China*, 71 Fed. Reg. 29303 (May 22, 2006), *amended by* 71 Fed. Reg. 35864 (June 22, 2006) ("*Final Determination*").

The Issues and Decision Memorandum for the *Final Determination* indicates that the Department's then recent proposal to end zeroing was a topic of some discussion. One importer (not a party in this matter) urged that, in light of the adverse WTO rulings and the proposed policy change, the Department should eliminate zeroing in the *Final Determination*. The Department declined to do so, noting:

> We recognize that the Department has initiated a process under section 123 of the URAA to address the potential implementation of the WTO panel's recommendation regarding the calculation of the weighted average dumping margin in antidumping investigations. To date, however, that implementation process has not run its course. As such, it is premature to determine precisely how the United States will implement the panel recommendation. With respect to the recent Appellate Body Report in the same dispute, the United States has not yet gone through the statutorily mandated process of determining whether to implement the report.

> As such, the WTO dispute settlement proceedings have no bearing on whether the Department's [use of zeroing] in this investigation is consistent with U.S. law. Accordingly, the Department will continue in this investigation to [use zeroing].

*Issues and Decision Memorandum* at 25, Court No. 09-00511 Admin. R. Pub. Doc. 610.

In July 2006, the ITC issued a final determination finding that the domestic industry was not materially injured or threatened with material injury by reason of the subject imports. *Diamond Sawblades and Parts Thereof From China and Korea*, 71 Fed. Reg. 39128 (July 11, 2006). As a consequence of the ITC's negative final determination, the diamond sawblades investigation terminated as a matter of law, and no antidumping order was issued. *See* 19 U.S.C. § 1673d(c)(2). Shortly thereafter, DSMC commenced two actions in this court, one seeking judicial review of the ITC's negative determination (Court No. 06-00247) and the other challenging various aspects of the Department's *Final Determination* (Court No. 06-00246).[2] While those matters were pending at this Court, the Department published the *Section 123 Determination* announcing its policy change on zeroing.

DSMC's challenge to the ITC determination proved to be successful, resulting in a reversal by the ITC on the question of threat-of-material-injury. The ITC issued a (now affirmative) remand determination on May 14, 2008, which the court sustained in its entirety. *Diamond Sawblades Mfrs. Coalition v. United States*, 33 CIT __, Slip Op. 09-5 (Jan. 13, 2009), *aff'd*, 612 F.3d 1348 (Fed. Cir. 2010). Although delayed by several legal challenges, Commerce published antidumping duty orders in conformance with the *Final Determination* on November 4, 2009. *See*

---

[2] DSMC's challenge to the Department's *Final Determination* was stayed pending the outcome of its challenge to the ITC's negative determination.

*Diamond Sawblades and Parts Thereof From the People's Republic of China and the Republic of Korea*: *Antidumping Duty Orders*, 74 Fed. Reg. 57145 (Nov. 4, 2009).

Where publication of the antidumping duty orders triggered a second opportunity to seek judicial review of the *Final Determination*, 19 U.S.C. § 1516a(a)(2)(A)(i)(II), ATM accordingly commenced its own challenge to the that decision in January 2010. ATM's challenge has been consolidated with DSMC's action (Court No. 06-00246) and is currently pending before this court under the caption *Advanced Technology & Materials Co., Ltd., v. United States*, Consol. Court No. 09-00511.

In addition to the challenge commenced here, ATM filed with the Department a request to conduct a (19 U.S.C. § 1675(b)) changed-circumstances review of the *Final Determination*. ATM asserted that circumstances warranted a review because the Department was required to recalculate the dumping margins in accordance the policy change set forth in *Section 123 Determination*. Specifically, ATM asserted that the policy change should be applied because (1) the diamond sawblades investigation was not yet finalized when the *Section 123 Determination* was published, and (2) even if the matter was not technically "pending" on the effective date, fairness required application of the new policy. R. Doc. 1.

In a letter dated December 14, 2009, Commerce denied ATM's request on the ground that the *Section 123 Determination* did not apply to the diamond sawblades investigation. *Decision Letter*, R. Doc. 2 at 1. It is that decision that ATM now seeks to challenge here, alleging jurisdiction under 28 U.S.C. § 1581(i). ATM's challenge to the *Decision Letter* is focused on the Department's conclusion that the policy change did not apply to the diamond sawblades investigation. ATM contends, *inter alia*, that the Department's failure to conduct a review in order to apply the *Section*

*123 Determination* was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law," and/or inadequately explained. *See* Complaint at ¶¶ 35, 39, 40, 42.

Accordingly, ATM now has two actions on the Court's docket: one action seeking judicial review of the *Final Determination* and the other (this matter) seeking review of the Department's refusal to initiate a changed circumstances review. Because both actions request the same ultimate relief, the government and DSMC present jurisdictional challenges based upon *Trustees in Bankr. of N. Am. Rubber Thread Co., Inc., v. United States,* 593 F.3d 1346 (Fed. Cir. 2010) (hereinafter "*Rubber Thread*"). Alternatively, Defendant and Defendant-Intervenor contend that ATM's motion is meritless and should be denied.

The government asserts that § 1581(i) jurisdiction cannot properly be invoked in this matter because ATM is already challenging the use of zeroing in the *Final Determination* in Court No. 09-00511, which serves to demonstrate the availability of jurisdiction under § 1581(c). The government argues further that, "despite [ATM's] characterization of this action as a changed circumstances request, the true nature of the action is a challenge to Commerce's continued use of zeroing in the final determination of this investigation . . . . This becomes particularly apparent when viewed in terms of the relief sought." Def.'s Mot. in Opp'n at 12.

In response, ATM asserts that the facts here can be distinguished from the circumstances in *Rubber Thread*, because unlike that case, ATM's two court challenges are not identical. According to ATM, its challenge to the *Final Determination* turns on, *inter alia*, "whether Commerce was correct in publishing an order incorporating the previous approach to zeroing when Commerce had changed its methodology for zeroing between the time of the final determination and the issuance of the order"; whereas here it argues that "even if Commerce were correct regarding

implementing the *Final Determination*, it now was compelled to issue a changed circumstances determination because of its change in practice regarding zeroing." Pls.' Reply at 5.

Discussion

A.

Section 1581 of Title 28, United States Code, provides this Court with "exclusive jurisdiction" to review the various types of civil actions listed in § § 1581(a) thorough (h), including "any civil action commenced under section 516A of the Tariff Act of 1930" (subsection (c)). These separate provisions are followed by § 1581(i), often referred to as a "catchall" or "residual" provision, because it gives the court, in addition to the actions listed in subsections (a) through (h), exclusive jurisdiction of civil actions that arise from other provisions of law. 28 U.S.C. § 1581(i).

However, § 1581(i) jurisdiction is subject to an important caveat: the Court may not exercise jurisdiction under § 1581(i) where jurisdiction is or could have been available under another subsection of § 1581, "unless the other subsection provided no more than a manifestly inadequate remedy." *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1002 (Fed. Cir. 2003) (citing *Norcal/Crosetti Foods, Inc. v. United States,* 963 F.2d 356, 359 (Fed. Cir. 1992)). Put differently, jurisdiction under § 1581(i) is available only if (1) jurisdiction is not available under any other subsection of § 1581, or (2) jurisdiction is available under another subsection of § 1581, but the remedy provided therein is "manifestly inadequate."

The government contends that § 1581(i) cannot be invoked here because jurisdiction for ATM's challenge is available under §1581(c), and that ATM is, in fact, availing itself of the remedy provided under § 1581(c) via its challenge to the *Final Determination*. Section 1581(c) provides the Court with jurisdiction over actions brought under section 516A of the Tariff Act of

1930; Section 516A, in turn, provides for judicial review of certain antidumping proceedings for the purpose of "contesting any factual findings or legal conclusions upon which the determination is based." 19 U.S.C. §1516a(a)(2)(A). *See Norsk Hydro Canada, Inc., v. United States*, 472 F.3d 1347, 1354 (Fed. Cir. 2006).

Hence, the problem with the government's argument is that, in this matter, ATM is not challenging any factual finding or legal conclusion found in the *Final Determination*. Instead, ATM's challenge concerns the entirely separate legal conclusion, set forth for the first time in the *Decision Letter*, that the policy change announced in the *Section 123 Determination* does not apply to the diamond sawblades investigation. The *Final Determination* was issued more than six months before the *Section 123 determination*, and could not possibly contain any factual findings or legal conclusions concerning its application. The fact that the *Final Determination* contains the Department's acknowledgment of the likely change in policy does not transform this action into a challenge to the *Final Determination*.

Nor is it possible to view the *Decision Letter* as conceptually part of the *Final Determination* in the manner of assessment rates or corrections of ministerial errors. *Cf. Am. Signature Inc., v. United States*, 598 F.3d 816, 825 (Fed. Cir. 2010) (holding that because assessment rates stem directly from the margins calculated in a final determination, those rates are considered part of that determination for purposes of review). This would seem particularly true where, as here, the Department expressly refused to consider the question on the ground that it was "premature to determine." *Issues and Decision Mem*. at 25.

The government's argument appears to be premised, at least in part, upon certain underlying viewpoints concerning the "true nature" of a claim. The government contends that,

"when viewed in terms of the relief sought," it becomes apparent that the "true nature" of ATM's claim is a challenge to the Department's use of zeroing in the *Final Determination*. Def's. Mot. in Opp'n. at 13. Accordingly, the government concludes that "[b]ecause the relief available under 1581(c) is precisely the same as the relief sought under section 1581(i), jurisdiction under section 1581(i) is unavailable." *Id*.

This argument misstates the law. Section 1581 does not confer jurisdiction based on the relief a plaintiff seeks, but upon the type of administrative decision under challenge. *See Canadian Wheat Bd. v. United States*, 641 F.3d 1344, 1351 (Fed. Cir. 2011) (observing that section 1581 "gives the court 'exclusive jurisdiction' to review eight different types of 'civil action[s]' listed in subsections (a) thorough (h) . . .").³ Hence, the "true nature" of a claim is not a determination of the ultimate relief sought by a plaintiff, but a determination of the legal conclusion that is actually being challenged in the pleadings. *See Shinyei Corp. of America v. United States,* 355 F.3d 1297, 1309 (Fed. Cir. 2004) ("a challenge to Commerce instructions on the ground that they do not correctly implement the published, amended administrative review results, is not an action defined under [19 U.S.C. § 1516a]"); *Consol. Bearings,* 348 F.3d at 1002 ("an action challenging Commerce's liquidation instructions is not a challenge to the final results, but a challenge to the 'administration and enforcement' of those final results"); *Canadian Wheat Bd. v. United States*, 32 CIT__, 580 F. Supp. 2d 1357, 1361 (2008) ("[t]he controversy here involves a legal conclusion found in the Notice of Revocation, but not contained in Commerce's final determination"); *Corus*

---

³ *See also Ugine and Alz Belgium v. United States*, 551 F.3d 1339, 1347 (Fed. Cir. 2009) (listing the various decisions that may be challenged and the corresponding jurisdictional provision for each); *Shinyei*, 355 F.3d at 1304.

*Staal v. United States*, 31 CIT 826, 835, 493 F. Supp. 2d 1276, 279 (2007) (finding that the true nature of a challenge was to Commerce decision because plaintiff did "not claim that the liquidation instructions are inconsistent" with the Department's review, but rather claimed "that the dumping margins should be different"); *Ceramica Regiomontana, S.A., v. United States*, 5 CIT 23, 26, 557 F. Supp. 596, 600 (1983) ("the crucial fact is that ITA's decision was *not* made during any proceeding that would culminate in a determination for which judicial review is provided under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c)").

  Finally, the government argues the following:

> The court may hear a challenge under § 1581(i) only where the plaintiff neither has, nor could have had, adequate relief available to it pursuant to litigation under any other section of 28 U.S.C. § 1581. Here, however, [ATM] has launched a simultaneous case under [] § 1581(c), asking for relief that is substantively identical and, indeed, more direct than the relief available to it here. Under the holding of *N. Am. Rubber Thread*, because adequate relief is available to [ATM] in its [§ 1581(c)] challenge to the [*Final Determination*] this action must be dismissed.

Def's Mot. in Opp'n. at 9.

  In the above quoted language, the government appears to contend that *Rubber Thread* changed the *Norcal/Crosetti* test to one where § 1581(i) jurisdiction is barred if a plaintiff is seeking (or could have sought) the same ultimate *relief*[4] "pursuant to *litigation* under any other section of

---

[4] To the extent that arguments regarding the "availability of adequate relief" are premised on the second part of *Norcal/Crosetti* jurisdictional rule (whether "the remedy provided under that other [available] subsection would be manifestly inadequate"), those arguments are misguided. The terms "remedy" and "relief" are not necessarily interchangeable. "'Remedy' can mean either specific relief obtainable at the end of a process of seeking redress, or the process itself, the procedural avenue leading to some relief." *Booth v. Churner*, 532 U.S. 731, 738, (2001). A brief survey of relevant caselaw indicates that the "remedy" of the *Norcal/Crosetti* jurisdictional rule refers to the procedural avenue, not the ultimate relief. *See Norcal/Crosetti*, 963 F.2d at 360 ("[c]ongress has provided a specific, detailed framework for domestic parties to challenge Customs' actions . . . .
(continued...)

Court No. 10-00012                                                                                          Page 12

28 U.S.C. § 1581." Def's. Mot. in Opp'n. at 9 (emphasis added).  This cannot be accepted.  *Rubber Thread* involved a unique circumstance where the plaintiff was left with two court actions not just seeking the same relief, but also challenging the same legal conclusion.  Nothing in *Rubber Thread* purports to abrogate the first question of the *Norcal/Crosetti* test, or to transform the second question of the test into one concerning the *relief* sought in other *litigation* as opposed to the *remedy* provided under another available subsection of § 1581.  *See Rubber Thread*, 467 F.3d at 1327 (observing that "for Heveafil's claim here, jurisdiction under another subsection of § 1581 is available and the remedy provided under that subsection is not manifestly inadequate").  Arguments similar to these were thoroughly addressed and rejected by this Court in *Tembec Inc., v. United States*, 441 F. Supp. 2d 1302 (2006) (per curiam) and *Canadian Wheat Board*, 580 F. Supp. 2d at 1362.  Notably, in affirming *Canadian Wheat Board*, the Federal Circuit agreed that "[i]t is most unlikely . . . that *Norcal/Crosetti* intended to bar jurisdiction under subsection (i) whenever a wholly different action

---

⁴(...continued)
these procedures are the proper remedies wherever available"); *Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987) ("mere allegations of financial harm . . . do not make the remedy established by Congress manifestly inadequate") (citing *Am. Air Parcel Forwarding Co. v. United States*, 718 F.2d 1546, 1550-51, (Fed. Cir. 1983)); *United States v. Uniroyal, Inc.*, 69 C.C.P.A. 179, 188, 687 F.2d 467, 475 (Cust. & Pat. App.1982) ("[u]nless inadequate as a matter of due process . . . appellee must utilize the exclusive remedies provided by Congress."). *See also JCM, Ltd., v. United States*, 210 F.3d 1357, 1359 (Fed. Cir. 2000) ("JCM's claim of entitlement to share in the relief afforded to others . . . is  without merit, and its failure to pursue its protest via the remedial path laid by Congress, deprived the Court of International Trade of subject matter jurisdiction").

seeking the same relief could have been brought under a different subsection of section 1581." *Canadian Wheat Bd.*, 641 F.3d at 1351.

B

Having found subject matter jurisdiction over the claim, the court will now proceed to the merits.

When the Court exercises jurisdiction under 28 U.S.C. § 1581(i), the cause of action is considered to arise under the Administrative Procedure Act. *See, e.g., Nat'l. Fisheries Inst. Inc., v. United States*, 33 CIT __, 637 F. Supp. 2d 1270, 1281 (2009). Accordingly, the court applies the standard of review set forth in 5 U.S.C. § 706, which provides that the court "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A). An agency decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Ins. Co*, 463 U.S. 29, 43 (1983). The agency must offer an explanation of the decision that is clear enough to enable judicial review, and the court will uphold "a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.*

In this instance, the Department found that circumstances did not warrant a changed circumstances review, stating:

> The Department's change in methodology in antidumping investigations with respect to the calculation of the weighted-average dumping margin does not apply to the investigation of diamond sawblades from the PRC. The Department was clear

>    that the effective date of its change in methodology was January 16, 2007, and that
>    the change would apply to "all investigations pending before the Department as of
>    the effective date." The Department completed its final determination in the
>    investigation of diamond sawblades from the PRC in 2006, prior to the effective date
>    of the change in methodology (i.e., January 16, 2007). Because the investigation on
>    diamond sawblades from the PRC was not "pending before the department" as of
>    January 16, 2007, the department's change in methodology does not apply to the
>    investigation. As such the department does not agree that it is appropriate to initiate
>    a changed circumstances review based on this request.

*Decision Letter* at 2.

ATM contends that the above explanation is inadequate because the Department (1) "made no effort whatsoever to explain the standards applied or the definition of the term 'pending,'" and (2) failed to "explain how it could make a determination under the unusual facts in this case, whether the investigation was 'pending' without initiating a review and obtaining a full briefing and record with regard to that issue." Pl's. Mot. at 11.

These contentions are without merit. Although the *Decision Letter* did not contain a separate discussion on the proper definition of "pending" or "pending before the department," the meaning it attributed to that term is nonetheless easily discernable. To wit, the letter conveys that an investigation is no longer "pending before the department" once the Department issues a final determination on the matter.

Further, the court cannot agree that the Department was obligated to discuss or otherwise investigate ATM's legal theory that the diamond sawblades investigation (perhaps under some alternative definition of the term "pending") somehow could have been "pending before the department" in January 2007. Even under the heightened requirements of formal adjudication, an agency is obligated only to discuss arguments of "cogent materiality," *United States v. Nova Scotia Food Products Corp.*, 568 F.2d 240, 252 (2d Cir. 1977), and the arguments ATM has presented are

neither. First, despite the importance ATM attributes to this argument, it is essentially a bare allegation. ATM offered no alternative definition of "pending" to support its position, cited to no legal authority, and provided no explanation at all as to how the Department (or the court) could reach the conclusion it advocates. Second, the possibility of an alternative definition is ultimately immaterial: the question that Commerce needed to resolve here did not require a survey of the various alternative ways that an investigation *might* be termed "pending"; the task, rather, was to interpret the meaning of that term as it was used in the *Section 123 Determination*. More precisely, to determine which investigations the Department was describing when it referred to "all investigations pending before the Department."

        In that respect, the legal conclusion set forth in the *Decision Letter* is not unreasonable. An examination of the *Section 123 Determination* shows that Commerce made several observations that clarify the meaning of "investigations pending before the Department." Commerce observed (1) that the "number of pending antidumping investigations is few (i.e. there are seven ongoing antidumping investigations)," and (2) that "[a]ll of the currently pending investigations were initiated as a result of petitions filed after the date of publication of the Department's proposed modification."[5] 71 Fed. Reg. at 77725. Even without access to the Department's records on then-current investigations, it is readily apparent (and without dispute) that the petition for the diamond sawblades investigation was filed almost one year *prior* to the

---

[5] That discussion further indicates that the Department initially proposed a much later effective date for the new policy, *i.e.*, that it would be applied to "investigations initiated on the basis of petitions received on or after the first day of the month following the date of publication" of the Department's final decision in the matter." 71 Fed. Reg. at 77725.

Court No. 10-00012                                                                                                    Page 16

publication of the proposed modification.  Hence, the Department's conclusion that the diamond sawblades investigation was not "pending before the department as of January 16, 2007" and therefore did not qualify for the policy change is not arbitrary, capricious, an abuse of discretion, and is in accordance with law.

Similarly, the Department did not err in failing to discuss why the reasoning set forth in the *Section 123 Determination* does not compel its application to the diamond sawblades investigation.  As noted above, the only relevant question for application of the new policy is whether that investigation was pending before the Department on January 16, 2007.  The Department would have no legal authority to apply the *Section 123 Determination* in a manner that ignores the express legal directive set forth therein, and instead based its decision on certain portions of the Department's reasoning.

Finally, to the extent that the "true nature" of this argument is actually a challenge to the *Section 123 Determination* itself, such a challenge (assuming that a *Section 123 Determination* is subject to judicial review at all) would also fall under § 1581(i) jurisdiction.  However, given the perfunctory nature of the allegation, the court is unwilling to opine on whether such a challenge, if properly brought, would be time barred by the two-year statute of limitations period set forth in 28 U.S.C. § 2636(i).  *See United States v. Commodities Export Co.*, 972 F.2d 1266, 1270 (Fed. Cir. 1992) (noting that a cause of action accrues only when "all events necessary to state the claim, or fix the alleged liability of the Government, have occurred").

The court has considered all of ATM's other arguments and finds them without merit.

## Conclusion

In consideration of the foregoing, the Court finds that the Department's refusal to conduct a changed circumstances review was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  Accordingly, the Department's action will sustained, and ATM's Motion for Judgment on the Agency Record will be denied.


                                                              /s/   R. Kenton Musgrave
                                                            R. Kenton Musgrave, Senior Judge

Dated: August 18, 2011
New York, New York

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

| | |
|---|---|
| ADVANCED TECHNOLOGY & MATERIALS CO., LTD., BEIJING GANG YAN DIAMOND PRODUCTS COMPANY, and GANG YAN DIAMOND PRODUCTS, INC., :<br><br>Plaintiffs, :<br><br>v. :<br><br>UNITED STATES, :<br><br>Defendant, :<br><br>and :<br><br>DIAMOND SAWBLADES MANUFACTURERS COALITION, :<br><br>Defendant-Intervenor. : | Before: R. Kenton Musgrave, Senior Judge<br>Court No. 10-00012 |

## JUDGMENT

This action having been submitted for decision, and the Court, after due deliberation and consideration of all papers and proceedings, having rendered a decision herein; now, therefore in conformity with said decision, it is hereby

**ORDERED, ADJUDGED AND DECREED** that the plaintiffs' Rule 56.1 Motion on the Agency Record be, and hereby is, denied; it is further

**ORDERED** that the Commerce Department's determination that circumstances did not warrant a changed circumstances review be, and hereby is, sustained.

                                              /s/   R. Kenton Musgrave
                                              R. Kenton Musgrave, Senior Judge

Dated: August 18, 2011
New York, New York